Frank Alexander LEWIS, Appellant,

v.

The STATE of Texas, State.

No. 2–01–120–CR.

Court of Appeals of Texas,
Fort Worth.

Sept. 9, 2002.

Danny D. Burns, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Assistant Criminal District Attorney and Chief of the Appellate Division; Helena F. Faulkner, Assistant Criminal District Attorney, Fort Worth, for Appellee.

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW

DIXON W. HOLMAN, Justice.

Pursuant to rule of appellate procedure 50, we have reconsidered our opinion upon the State's petition for discretionary review. TEX.R.APP. P. 50. We withdraw our June 27, 2002 opinion and judgment and substitute the following.

Appellant Frank Alexander Lewis appeals his conviction and ten-year sentence for stalking. In five points, Appellant complains his conviction violates the double jeopardy clause because the present conviction was based on the same behavior for which he had been previously convicted of telephone harassment involving another victim, the evidence is legally and factually insufficient to support his conviction for stalking, the trial court erred in overruling his objection to testimony about his extraneous conduct, and the stalking statute is an unconstitutional infringement on his right to freedom of speech. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Susan Charles and Appellant first went out in 1992 and would talk or go to dinner occasionally. Later, the two became more serious and dated for approximately two years. After Appellant became more and more possessive and physically abusive, however, Charles began to avoid him. For the next four years, Appellant called, followed, and harassed Charles relentlessly. Appellant went to her apartment on countless occasions, knocking on the door or windows and yelling at Charles to let him in. Appellant called Charles and her coworkers at work and faxed pornographic materials to Charles' attention at work.

Charles changed her phone number over twenty-five times and kept an unlisted number. She moved frequently and removed her name from her car title, insurance, utilities, and credit cards. However, Appellant would eventually relocate her and would start harassing her again. Appellant constantly left messages on

Charles' phone threatening to kill her, threatening her family, or threatening to mail a videotape to her family that he supposedly had of them engaging in sexual intercourse. Charles' tires were slashed on several occasions and her apartment patio was vandalized. Charles filed numerous reports with the Arlington Police Department and had officers closely patrol her apartment complex. Officers arrested Appellant at her apartment complex for public intoxication and officially warned Appellant not to return to that location. Subsequently, Appellant was arrested for criminal trespass for failing to comply with the warning. Appellant was also prosecuted for telephone harassment after Robert Reed, who was unfortunate enough to have been assigned one of Charles' former telephone numbers, reported Appellant to the police for continuously calling and leaving obscene messages for Charles or threatening Reed himself.

Finally, in July of 2000, as Charles left work, she noticed Appellant following her. Charles used her cell phone to call the police and pulled into a grocery store parking lot. Charles went inside and Appellant waited outside in his car. The police arrived and Appellant fled. After a lengthy high-speed chase, Appellant stopped on a bridge, climbed on top of his car, and acted as though he was going to jump off the bridge. Officers eventually grabbed Appellant and arrested him.

## DOUBLE JEOPARDY

Appellant's first point alleges his conviction for stalking violates the double jeopardy provision of the constitution because he was convicted of telephone harassment in 1999 for the same conduct on which his current conviction is partially based. He asserts that telephone harassment is a lesser included offense of stalking. In 1999, Appellant placed several phone calls

to a number that formerly belonged to Charles, but had been reassigned to Reed. Appellant left messages threatening both Charles and Reed, and called Reed anonymously numerous times. The instruments charging Appellant with both telephone harassment in 1999, and stalking here, alleged the same conduct as the basis for both offenses.

■ The double jeopardy clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. CONST. amend. V. Generally, this clause protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; (3) multiple punishments for the same offense. *United States v. Dixon,* 509 U.S. 688, 695–96, 113 S.Ct. 2849, 2855–56, 125 L.Ed.2d 556 (1993); *Ex parte Herron,* 790 S.W.2d 623, 624 (Tex.Crim.App.1990) (op. on reh'g).

■ When the same act or transaction violates two statutory provisions, the offenses are the same for double jeopardy purposes if one offense contains all the elements of the other; they are different if each offense has a unique element. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The elements contained in the charging instruments, rather than the penal provisions, are controlling in a double jeopardy analysis. *State v. Perez,* 947 S.W.2d 268, 270–71 (Tex.Crim.App.1997); *Parrish v. State,* 869 S.W.2d 352, 354 (Tex.Crim.App. 1994). An offense is a lesser included offense if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. TEX.CODE CRIM. PROC. ANN. art. 37.09(1) (Vernon 1981). It does not matter if the charged offense can be established on a theory that does not contain the lesser offense; the issue is whether proof

of the charged offense, in *this* case, actually included proof of the lesser included offense as defined in article 37.09. *Schweinle v. State*, 915 S.W.2d 17, 18 (Tex. Crim.App.1996); *Broussard v. State*, 642 S.W.2d 171, 173 (Tex.Crim.App.1982).

■ Here, the information in the telephone harassment case in which Reed was the complainant alleged that (1) Appellant made repeated telephone communications anonymously to Reed (2) with the intent to harass, annoy, alarm, abuse, torment, or embarrass another. In contrast, the indictment for stalking Charles alleged as *one* of six incidents:[1] (1) that Appellant left a telephone message stating that Charles "had better watch out;" (2) that Appellant knew or reasonably believed Charles would regard the message as threatening bodily injury or death; (3) that the message caused Charles to fear bodily injury or death; (4) and would have caused a reasonable person to fear bodily injury or death; and (5) was made pursuant to the same scheme or course of conduct as the other incidents alleged in the indictment.

The elements of telephone harassment alleged in the 1999 information tracked the statutory language in penal code section 42.07(a)(4) and are completely different than the elements of stalking alleged in the indictment here, which tracked the statutory language of penal code section 42.072(a)(1)(A) and (a)(3)(A). TEX. PENAL CODE ANN. §§ 42.07(a)(4), 42.072(a)(1)(A), (a)(3)(A) (Vernon 1997 & Supp.2002). In prosecuting Appellant for stalking Charles, the State was not required to prove either that Appellant made repeated anonymous telephone communications to Reed or that

he did so with the intent to "harass, annoy, alarm, abuse, torment, or embarrass another." Rather, the State had to prove that the telephone call Appellant made wherein he stated that Charles had "better watch out" constituted conduct that a reasonable person would regard as threatening bodily injury and death or that Appellant knew or reasonably believed Charles would regard as threatening bodily injury or death. *See* TEX. PENAL CODE ANN. §§ 42.072(a)(1)(A), (a)(3)(A).

That some of the same evidence proved both offenses does not constitute a double jeopardy violation because Appellant's single act of calling Reed violated two distinct statutes and harmed two distinct victims. The proof in the instant case focused on Appellant's actions toward Charles, not his actions toward Reed. Moreover, the telephone harassment statute required, and the information in the telephone harassment case alleged, that Appellant made *repeated* anonymous calls to Reed. *See* TEX. PENAL CODE ANN. § 42.07(a)(4). However, in Appellant's trial for stalking here, the State presented evidence of only a *single* telephone call placed by Appellant. Therefore, the evidence presented in the stalking trial would not have supported Appellant's conviction for the lesser included offense of telephone harassment. Because the telephone harassment of Reed is not established by proof of the same or less than all the facts required to establish the offense of stalking Charles, telephone harassment is not a lesser included offense of stalking in this case, nor is there a double jeopardy violation. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09(1).

---

1. The stalking statute requires the State to allege more than one incident of stalking to show a scheme or course of conduct. TEX. PENAL CODE ANN. § 42.072 (Vernon Supp. 2002). Because Appellant's point here, however, complains only of the one incident that arose from the same conduct as did his telephone harassment conviction, we will not set out the other five incidents of stalking alleged in the indictment until later in the opinion.

We further conclude that the trial court did not otherwise err in allowing the State to introduce evidence of the incident from which Appellant's conviction for telephone harassment arose even though it arose prior to the 2001 amendment to the stalking statute. Contrary to Appellant's argument, in a prosecution for stalking, it is not error to admit evidence of incidents occurring prior to the date alleged in the charging instrument and prior to the effective date of the statute. *See Clements v. State*, 19 S.W.3d 442, 448 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Accordingly, because Appellant's conviction for stalking did not violate the double jeopardy clause and the court did not err in admitting the prior incident from which Appellant's conviction for telephone harassment arose, we overrule Appellant's first point.

### LEGAL AND FACTUAL SUFFICIENCY

In points two and three, Appellant argues the evidence is legally and factually insufficient to support his conviction for stalking. Specifically, Appellant argues that, because Charles would never have heard the telephone message threatening her if Reed had not recorded it and the police had not played the recording for Charles, there is no evidence of a causal connection between the alleged offense and Appellant's acts.

### Standard of Review

■ In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict. *Cardenas v. State*, 30 S.W.3d 384, 389–90 (Tex.Crim. App.2000); *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied*, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.App.2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* In performing this review, we are to give due deference to the fact finder's determinations. *Id.* at 8–9; *Clewis*, 922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 9, 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

### Analysis

Appellant complains of the legal and factual sufficiency of the evidence to support his conviction based on the fact that Charles would not have been placed in fear

but for the police's action of playing the taped telephone message for her. He does not complain, however, about the sufficiency of the evidence to support the other five allegations of stalking contained in the indictment.

In addition to the allegation involving the telephone message left on Reed's answering machine, the indictment alleges: (1) on November 23, 1999, Appellant knocked on Charles' bedroom window, and she looked outside to see him standing on the sidewalk about ten or fifteen feet from her apartment; (2) on June 25, 2000, Appellant left a telephone message for Charles stating, "You're gonna be done, bitch. You're gonna be done"; (3) on July 4, 2000, Appellant left a telephone message for Charles stating, "You fucked up my life, now you have got to be part of it until I die"; (4) on July 4, 2000, Appellant left a phone message saying he would "make things even with [Charles]" and made a reference to "an eye for an eye and a tooth for a tooth"; and (5) on July 6, 2000, Appellant followed Charles in a car. It appears to be Appellant's position that his conviction should be reversed, even if the five incidents are supported by the evidence, so long as the single allegation involving the telephone message on Reed's answering machine is not supported by legally and factually sufficient evidence.

■ Courts have held, however, that evidence is sufficient to support a conviction, even where it is insufficient to support all the criminal incidents charged, as long as the incidents that are proved are enough to support a verdict that the defendant is guilty of the offense charged. *See, e.g., Cook v. State,* 488 S.W.2d 822, 824 (Tex.Crim.App.1972) (holding evidence supporting theft of one of four animals charged was sufficient to support conviction); *State v. Weaver,* 945 S.W.2d 334, 335 (Tex.App.-Houston [1st Dist.] 1997) (hold-

ing lack of sufficient evidence to support each of thirty-two complaints of theft did not override other evidence sufficient to support conviction), *aff'd,* 982 S.W.2d 892 (Tex.Crim.App.1998), *cert. denied,* 528 U.S. 830, 120 S.Ct. 86, 145 L.Ed.2d 73 (1999); *Harrell v. State,* 834 S.W.2d 540, 543 (Tex. App.-Houston [14th Dist.] 1992, pet. ref'd) (holding evidence supported conviction for theft of aggregate amount even though evidence was not sufficient to support theft of each of eighty-three checks charged stolen). Here, even if we agreed with Appellant's contention regarding the telephone message the police played for Charles, the record establishes the evidence was both legally and factually sufficient to support the jury's verdict based on the other five incidents of stalking alleged in the indictment.

### The November 23, 1999 Telephone Message

First, Officer Jason Vire with the Arlington Police Department testified he got a call on November 23, 1999 that a woman had called reporting a prowler around 3:34 a.m. Charles told the dispatcher that the prowler was Appellant and that he would be driving either an older model brown Cadillac or a four-door white Chevrolet Astro van. Vire testified that he spoke to Charles, who was angry and fearful, but that he and the other officers who helped investigate could not find Appellant or his car on or around the premises.

Charles testified that Appellant had awakened her around 3:30 a.m. the night of November 23, 1999 by knocking on her bedroom window. She looked out of her blinds and saw Appellant standing on the sidewalk near the edge of her patio with his hands up in the air. She closed the blinds and called 911. After this incident, Charles testified, she was afraid and continued receiving phone calls from Appel-

lant, so she moved in with friends. A few days thereafter, Charles further testified, she was evicted from her apartment because someone had put pictures up around her apartment complex of a woman that looked like her having sexual intercourse with several men. Written on the pictures were her full name, telephone number, apartment number, and a description of her car.

### The June 25, 2000, and July 4 and 6, 2000 Telephone Messages

Officer Peggy Carr, of the Grand Prairie Police Department, testified that on June 23, 2000, Charles came into the police station appearing scared, fearful, and nervous. Charles complained that Appellant was stalking and harassing her by telephone. Officer Mark Taddonio was assigned to investigate Charles' complaints. On June 29, 2000, Taddonio met with Charles at the police station so that she could submit a formal, written statement and turn in recorded voice mail messages from Appellant as evidence. After listening to the messages, Taddonio prepared a probable cause warrant for Appellant's arrest. Taddonio also set up surveillance at Appellant's place of employment and at an address that he had been known to frequent. While watching the house at which Appellant had been seen in the past, Taddonio took pictures of cars in the driveway, one of which was a cream-colored Lincoln that was missing a license plate on the front.

Charles testified to the contents of the tapes she gave Taddonio. In one of the messages, Appellant told Charles that it was Christmas time, that there was an office just like hers in Oklahoma where he lived, and that he wanted her to move to Oklahoma with him. In other messages, Appellant mentioned her father and told her he knew both of her sisters' children and how old they were. She testified that she had rarely, if ever, discussed her sisters' children with Appellant and had no idea how he knew their ages. Charles perceived these messages as threatening to her and to her family.

Charles further testified to contents of other tape-recorded messages that Appellant had left in which he would take recordings of her voice and dub in his own voice responding to her. Appellant would add comments while he was playing the tape recordings of Charles' voice and his own voice. In one of these tapes, Appellant told Charles, "You're going to be done, bitch." Charles testified that she was scared Appellant was "going to come after me" or was going to "[e]ither kill me or as he told me he was going to do, chain me to a mobile home on his land west of the metroplex." Charles stated Appellant told her if he chained her up no one would be able to find her. Appellant told her he would chain her up to teach her a lesson about what a woman was supposed to do, which was to stay at home, cook, and clean. Charles said such comments made her feel, "scared [and] sick," and she believed Appellant had the ability to follow through with his threats.

Charles next testified to another message Appellant had left at her office in which he told her she had messed up his life and was going to have to spend the rest of her life with him. Charles testified the message scared her because she "thought he was going to do what he was saying he was going to do," which was to hurt her or to kill her. As July approached, Charles testified she was afraid Appellant might start following her as he had done in the past, "[b]ecause he always found me and he was telling me that he was going to."

### The July 6, 2000 Incident

Charles stated that Appellant had left her a message in July stating the time she had left her office and describing a black and white polka dotted dress she was wearing that day. He also mentioned "Hemphill," which was a road Charles crossed on her way home. Charles was in the habit of taking numerous exits off of the highway and getting back on the highway, or going through residential areas to be certain Appellant was not following her.

On July 6, 2000, as Appellant took her usual twists and turns going home, she noticed a champagne-colored Lincoln Town Car with no front license plate following behind her. She was afraid it was Appellant because Taddonio had called and described a cream-colored Lincoln with no front license plate that was in front of the home at the address he had under surveillance. Charles cut across three lanes of traffic to take the next available exit and the Lincoln followed her. Charles sped at sixty-five miles an hour down Hulen Street in Fort Worth until she saw a grocery store, but the car kept following. Charles then cut across two lanes of traffic and got in the turn lane at a red light to turn left. The Lincoln pulled directly behind her, and in her rearview mirror she could see that Appellant was the driver. After Charles turned left and then turned into a grocery store parking lot, she went inside and called the police and Appellant was arrested.

In light of this uncontroverted evidence from the record, the evidence is both legally and factually sufficient to sustain the jury's verdict that Appellant is guilty of the offense of stalking, even if there is no causal connection between the telephone message Appellant left on Reed's machine and Charles' injuries. Because the evidence of the five other incidents clearly supports the jury's guilty verdict, we need not decide whether the evidence of Appellant's phone call to Reed is legally and factually sufficient to sustain the jury's guilty verdict. We overrule Appellant's second and third points.

### EXTRANEOUS CONDUCT

Appellant's fourth point alleges the trial court erred by overruling his objection to the admission of evidence of his extraneous conduct that was not alleged in the indictment. Specifically, Appellant argues that Charles' testimony about harassing phone calls and other acts committed by Appellant in 1993, 1994, and 1995 constituted an ex post facto violation of Appellant's rights because the stalking statute was not in effect at that time. Appellant claims that, although he failed to object to Charles' testimony about Appellant's conduct in 1993, 1994, and 1995, he requested and was given a running objection to all testimony regarding acts that took place prior to the time the stalking statute was enacted.

■ We disagree. An objection preserves only the specific ground cited. TEX. R.APP. P. 33.1(a)(1)(A); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Butler v. State*, 872 S.W.2d 227, 237 (Tex. Crim.App.1994), *cert. denied*, 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995); *see also Fierro v. State*, 706 S.W.2d 310, 317–18 (Tex.Crim.App.1986), *cert. denied*, 521 U.S. 1122, 117 S.Ct. 2517, 138 L.Ed.2d 1019 (1997) (a general objection is not sufficient to apprise trial court of complaint urged and thus preserves nothing for review). Appellant obtained a running objection after he objected to the State's opening argument that mentioned telephone calls Appellant made to Reed in 1999. At no time in the record of this trial, however, whether via a running objection or otherwise, did Appellant object

to Charles' testimony about extraneous acts Appellant committed in 1993, 1994, and 1995. We overrule Appellant's fourth point because he has failed to preserve error. TEX.R.APP. P. 33.1(a)(1)(A).

### CONSTITUTIONALITY OF THE STATUTE

In his fifth point, Appellant complains that the stalking statute, on its face, presents an unconstitutional infringement on the right to free speech because it is overbroad and too vague. A statute is overbroad if, in addition to proscribing activities that may be constitutionally forbidden, it sweeps within its coverage conduct that is constitutionally protected. *Clark v. State*, 665 S.W.2d 476, 482 (Tex.Crim.App. 1984). A statute is vague if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972).

When reviewing the constitutionality of a statute, we presume the statute is valid and that the legislature has not acted unreasonably or arbitrarily in enacting the statute. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex.Crim.App.1978). The burden rests on the party challenging the statute to establish its unconstitutionality. *Cotton v. State*, 686 S.W.2d 140, 145 (Tex.Crim.App.1985); *Ex parte Granviel*, 561 S.W.2d at 511. We uphold the statute if we can determine a reasonable construction that will render it constitutional and carry out the legislative intent. *See Ely v. State*, 582 S.W.2d 416, 419 (Tex.Crim.App. 1979).

We follow our recent holding in *Sisk v. State*, 74 S.W.3d 893 (Tex.App.-Fort Worth 2002, no pet.), as well as the holdings of our sister courts, in concluding that the current version of the stalking statute is not unconstitutional. *See Battles v. State*, 45 S.W.3d 694, 702–03 (Tex.App.-

Tyler 2001, no pet.); *Clements v. State*, 19 S.W.3d 442, 451 (Tex.App.-Houston [1st Dist.] 2000, no pet.). First, the statute is not unconstitutional because it prohibits conduct that causes another person to be placed in fear of bodily injury or death. *Clements*, 19 S.W.3d at 451. Conduct enjoys no first amendment protection when the actor intends to place the recipient in fear of bodily injury or death. *See Long v. State*, 931 S.W.2d 285, 290 (Tex.Crim.App. 1996); *Webb v. State*, 991 S.W.2d 408, 415 (Tex.App.-Houston [14th Dist.] 1999 pet. ref'd). Second, the statute states that one can be guilty of stalking by engaging in conduct that he *knows* or reasonably *believes* will be regarded as threatening bodily injury or death. TEX. PENAL CODE ANN. § 42.072(a)(1). A person who knows or reasonably believes his conduct will be regarded as threatening bodily injury or death is necessarily on notice that his conduct is prohibited. *Clements*, 19 S.W.3d at 450. Accordingly, it cannot be said that the statute sweeps within its coverage conduct that is constitutionally protected or that the statute fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. We overrule Appellant's fifth point.

### CONCLUSION

Having overruled all of Appellant's points, we affirm the trial court's judgment.

DAUPHINOT, J. filed a dissenting opinion.

**LEE ANN DAUPHINOT, J.,** dissenting.

The majority holds that the telephone harassment offense for which Appellant was previously convicted is not a lesser included offense of stalking. I must respectfully dissent to this holding. Tele-

phone harassment, under the facts of this case, is a lesser included offense of stalking because, as charged in the indictment, it is included within the proof necessary to establish the stalking offense.[1]

Section 42.07 of the Texas Penal Code provides in pertinent part:

> (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:
>
> . . .
>
> (2) threatens, by telephone, in writing, or by electronic communication, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of his family or household, or his property; [or]
>
> . . .
>
> (4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.[2]

Appellant placed threatening calls on or about December 18, 1999. Although he intended the calls for Susan Charles, Robert Reed received them. Appellant was convicted of telephone harassment of Reed, although Charles was his intended victim. It is undisputed that the indictment in the case relies in part on the calls Reed received. The majority points out, "The instruments charging Appellant with both telephone harassment in 1999, and stalking here, alleged *the same conduct as the basis for both offenses.*" (Emphasis added).

The State argues, and the majority holds, that because the misdemeanor information charging Appellant with telephone harassment of Reed alleged an offense under section 42.07(a)(4), while the stalking indictment charged an offense under sections 42.072(a)(1)(A) and (a)(3)(A) of the Texas Penal Code, the elements are completely different.[3] The majority maintains that because the two charging instruments name different complainants, allege a different number of telephone calls (repeated versus one), and differ in the intent elements charged, that the common telephone call and message used to satisfy the conduct element for both the harassment and stalking offenses do not make harassment a lesser included offense of stalking. Respectfully, I cannot agree.

The harassment information alleges that Appellant, "on or about the 18th day of DECEMBER 1999, did THEN AND THERE INTENTIONALLY, WITH INTENT TO HARASS, ANNOY, ALARM, ABUSE, TORMENT OR EMBARRASS ANOTHER, MAKE REPEATED TELEPHONE COMMUNICATIONS ANONYMOUSLY TO ROBERT REED." The stalking indictment alleges that on the same date, Appellant did

> KNOWINGLY ENGAGE IN CONDUCT, TO WIT: TELEPHONED AND LEFT A RECORDED MESSAGE FOR SUSAN CHARLES . . . THAT WAS DIRECTED SPECIFICALLY AT ANOTHER, NAMELY, SUSAN CHARLES, THAT THE DEFENDANT KNEW OR REASONABLY BELIEVED THAT THE SAID SUSAN CHARLES WOULD REGARD

---

1. *See Lofton v. State,* 45 S.W.3d 649, 651 (Tex.Crim.App.2001).

2. Tex. Penal Code Ann. § 42.07(a) (Vernon Supp.2002).

3. Tex. Penal Code Ann. §§ 42.07(a)(4), 42.072(a)(1)(A), (a)(3)(A) (Vernon 1997 & Supp.2002).

AS THREATENING BODILY INJURY OR DEATH FOR SUSAN CHARLES AND SAID CONDUCT CAUSED SUSAN CHARLES TO BE PLACED IN FEAR OF BODILY INJURY OR DEATH, AND SAID CONDUCT WOULD CAUSE A REASONABLE PERSON TO FEAR BODILY INJURY OR DEATH FOR HIMSELF....

The telephone harassment statute provides four different ways a person commits that offense.[4] The legislature did not create four different offenses by describing multiple ways of committing telephone harassment. In the case before us, the misdemeanor information charging harassment describes a violation of section 42.07(a)(4), as the majority points out. The stalking allegation, however, describes the same act in terms of section 42.07(a)(2), a different manner and means of committing harassment. Allegation of a different manner and means of committing the same offense does not constitute allegation of a different offense.[5] The harassment information and the stalking indictment allege the same December 18th offense, not two separate offenses. The fact that the State pled a different manner and means of committing harassment in the stalking indictment does not mean it pled a new offense.[6] Analogously, if a defendant were charged and convicted under the "normal use" prong for driving while intoxicated (DWI), he could not subsequently be tried under the breath or blood alcohol concentration (BAC) prong for the same act.[7]

The harassment, as charged in the information, is a lesser included offense of harassment as charged in the stalking indictment. This fact is yet another reason that prosecution of Appellant under the stalking indictment is jeopardy barred. When Appellant committed harassment against Reed, he was attempting to commit the offense against Charles. The State argues that the December 18th offense is actually two separate offenses, although only a single act, because the harassment information names Reed as the complainant while the stalking indictment names Charles. When Appellant made the calls intended for Charles but received by Reed, his intent was to harass Charles. He had no way of knowing that Reed, not Charles, would receive the calls. That is, Appellant attempted to commit the harassment offense against Charles when he committed the offense against Reed.

Texas Code of Criminal Procedure article 37.09 provides:

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable

---

4. *See* Tex. Penal Code Ann. § 42.07(a).

5. *See Price v. State,* 59 S.W.3d 297, 303 (Tex. App.-Fort Worth 2001, pet. ref'd) (holding definition of "intoxicated" in the DWI statute sets forth alternative means of committing one offense and does not set forth separate and distinct offenses).

6. *Id.*

7. *See id.; see also* Tex. Penal Code Ann. §§ 49.01(2), 49.04(a) (Vernon Supp.2002).

mental state suffices to establish its commission; or

(4) it consists of an *attempt* to commit the offense charged or an otherwise included offense.[8]

The double jeopardy clause bars the State from putting a person in jeopardy twice for the same offense.[9] "For double jeopardy purposes, '[t]he same offense means the identical criminal act, not the same offense by name.'"[10] If an offense is a lesser included offense of the other, then the two offenses are also the "same" for double jeopardy purposes.[11] A defendant may not be tried for the same offense in multiple prosecutions even though the State alleges a different manner and means of committing that offense.[12]

Not only does the fact that Appellant managed to commit the intended offense against the wrong person make him guilty of the lesser included attempt as described by article 37.09, his error implicates the transferred intent provisions of Texas Penal Code section 6.04(b). That section provides:

A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:

(1) a different offense was committed; or

(2) a different person or property was injured, harmed, or otherwise affected.[13]

Whether Appellant was convicted under a theory of transferred intent or whether the harassment offense is read in such a way that it does not require that the person actually injured be the person the actor intended to injure, Charles was the intended victim. While Appellant's act was an offense against Reed, it was, at the same time, an attempted harassment of Charles. Under article 37.09(4), the attempt is included in the completed offense, even if the victims are not the same person.[14] Similarly, evidence of a single telephone call is a lesser included element of the offense of harassment.[15]

Appellant was convicted of the December 18, 1999 telephone harassment, and further prosecution for that offense, even as a lesser included element of a greater offense, is jeopardy barred. I would so hold.

---

**8.** TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981) (emphasis added).

**9.** U.S. CONST. amends. V, XIV.

**10.** *Ex parte Goodbread,* 967 S.W.2d 859, 860 (Tex.Crim.App.1998) (quoting *Luna v. State,* 493 S.W.2d 854, 855 (Tex.Crim.App.1973)).

**11.** *Parrish v. State,* 869 S.W.2d 352, 354 (Tex.Crim.App.1994); *Ex parte Granger,* 850 S.W.2d 513, 516 (Tex.Crim.App.1993).

**12.** *Monge v. California,* 524 U.S. 721, 727–28, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615 (1998); *Nickerson v. State,* 69 S.W.3d 661, 670 (Tex.App.-Waco 2002, pet. ref'd).

**13.** TEX. PENAL CODE ANN. § 6.04(b) (Vernon 1994).

**14.** TEX CODE CRIM. PROC. ANN. art. 37.09(4).

