IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00203-CR

 

Quenton Maurice Woodson,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 249th District Court

Johnson County, Texas

Trial Court No. F37849

 



Opinion



 








          Quenton Maurice Woodson appeals the revocation
of his community supervision for stalking.  Woodson contends in three points
that the court abused its discretion by revoking his community supervision
because: (1) there is insufficient evidence to establish a violation of the
terms and conditions of community supervision; (2) the stalking statute is
unconstitutionally vague on its face; and (3) GPS tracking records and
supporting testimony regarding his whereabouts did not meet the Kelly
standard for the admission of scientific evidence.  We will affirm.

 

Constitutionality of Section 42.072

          Woodson contends in his second point
that section 42.072 of the Penal Code is unconstitutionally vague[1]
on its face.

          Section 42.072 provides in pertinent
part:

          (a) A person commits an offense if the
person, on more than one occasion and pursuant to the same scheme or course of
conduct that is directed specifically at another person, knowingly engages in
conduct, including following the other person, that:

 

          (1) the actor knows or
reasonably believes the other person will regard as threatening:

 

                    (A) bodily injury or death
for the other person;

          (B) bodily injury or
death for a member of the other person’s family or household; or

 

          (C) that an offense will
be committed against the other person’s property;

 

          (2) causes the other
person or a member of the other person’s family or household to be placed in
fear of bodily injury or death or fear that an offense will be committed
against the other person’s property; and

 

          (3) would cause a
reasonable person to fear:

 

                    (A) bodily injury or death
for himself or herself;

          (B) bodily injury or
death for a member of the person’s family or household; or

 

                    (C) that an offense will be
committed against the person’s property.

Tex. Pen. Code Ann. § 42.072(a) (Vernon 2003).     

          Woodson specifically contends that the
phrases “pursuant to the same scheme or course of conduct” and “reasonable
person” are too vague and indefinite to be enforceable.  He also contends that
the statute is unconstitutionally vague because it contains no “temporal
requirement” with regard to the element of the offense that the actor commit
the threatening conduct “on more than one occasion.”

          A facial challenge to the
constitutionality of a statute may be raised for the first time on appeal.  See
Ex parte Flores, 130 S.W.3d 100, 106 (Tex. App.—El Paso 2003, pet. ref’d); Rodriguez
v. State, 71 S.W.3d 800, 802 (Tex. App.—Texarkana 2002, no pet.); Bryant
v. State, 47 S.W.3d 80, 84 (Tex. App.—Waco 2001, pet. ref’d); see also
Garcia v. State, 887 S.W.2d 846, 861 (Tex. Crim. App. 1994) (because
appellant did not challenge statute as “facially unconstitutional,” appellant
had to object at trial to preserve issue for appellate review).

          A statute is unconstitutionally vague
if it fails to “give the person of ordinary intelligence a reasonable
opportunity to know what is prohibited” or “provide explicit standards for
those who apply them.”  Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298-99, 33 L. Ed. 2d 222 (1972); accord State v. Markovich,
77 S.W.3d 274, 279 (Tex. Crim. App. 2002); Coggin v. State, 123 S.W.3d 82,
87 (Tex. App.—Austin 2003, pet. ref’d).

          The four Texas courts of appeals which
have addressed this issue have all concluded that section 42.072 is not
unconstitutionally vague.  See State v. Seibert, 156 S.W.3d 32,
37 (Tex. App.—Dallas 2004, no pet.); Lewis v. State, 88 S.W.3d 383, 392
(Tex. App.—Fort Worth 2002, pet. ref’d); Battles v. State, 45 S.W.3d 694,
702-03 (Tex. App.—Tyler 2001, no pet.); Clements v. State, 19 S.W.3d 442,
449-51 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

          The Tyler Court has specifically
rejected the contention that the phrase “pursuant to the same scheme or course
of conduct” is not unconstitutionally vague.  Battles, 45 S.W.3d at
703.  Two of the other three courts cited this decision with approval even
though they did not refer to this particular phrase.  See Seibert, 156
S.W.3d at 37; Lewis, 88 S.W.3d at 392.  We agree with these courts.

          A statute which incorporates a
“reasonable person” standard will generally[2] be
sufficient to pass constitutional muster.  See Long v. State, 931 S.W.2d
285, 290 (Tex. Crim. App. 1996); Clements, 19 S.W.3d at 450; DeWillis
v. State, 951 S.W.2d 212, 215-17 (Tex. App.—Houston [14th Dist.] 1997, no
pet.).  Thus, in Long, the Court of Criminal Appeals cited with approval
several statutes which contain such a standard.  931 S.W.2d at 290 (citing, e.g.,
Tex. Pen. Code Ann. § 22.041(a),
(e) (Vernon Supp. 2005),[3] § 33.11(a)(2)(B)
(Vernon 2003)[4]).

          Section 42.072(a)(3) prohibits a person
from engaging in conduct that “would cause a reasonable person to fear” bodily
injury or death to himself or another or an offense against his property.  Tex. Pen. Code Ann. § 42.072(a)(3). 
Because the statute incorporates a “reasonable person” standard, we hold that
it is not unconstitutionally vague.  See Long, 931 S.W.2d at 290; Clements,
19 S.W.3d at 450; DeWillis, 951 S.W.2d at 215-17.

          Woodson also contends that the statute
is unconstitutionally vague because it contains no “temporal requirement” with
regard to the element of the offense that the actor commit the threatening
conduct “on more than one occasion.”  Thus, Woodson contends, “Conceivably a
person could commit two assaults four years apart and, because of the lack of a
temporal requirement in the statute, still be prosecuted for the stalking even
though a requisite criminal act is barred from prosecution.”  We disagree.

          Section 42.072 requires that these
multiple incidences of threatening conduct be committed “pursuant to the same
scheme or course of conduct.”  Tex. Pen.
Code Ann. § 42.072(a).  This is the pertinent temporal restriction.  We
have already concluded that this phrase is not unconstitutionally vague. 
Rather, the requirement that the defendant engage in more than one incidence of
threatening conduct “pursuant to the same scheme or course of conduct” is “an
element of the offense that must be charged in the indictment, submitted to the
jury, and proven at trial.”  See State v. Rogers, 138 S.W.3d 524,
526 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (construing section 31.09 of
the Penal Code).[5]

          For the foregoing reasons, we overrule
Woodson’s second point.

 

Evidentiary Sufficiency

          Woodson contends in his first point
that the court abused its discretion by revoking his community supervision
because the evidence is legally and factually insufficient to prove that his
leg monitor was functioning properly on the dates he allegedly violated the
electronic monitoring condition of his community supervision.  We construe Woodson’s
first point as an assertion that the State failed to prove by a preponderance
of the evidence that he violated this condition of his community supervision.  See
 Moreno v. State, 22 S.W.3d 482, 488 (Tex. Crim. App. 1999); Brooks v.
State, 153 S.W.3d 124, 126 (Tex. App.—Beaumont 2004, no pet.).

          The condition of community supervision
at issue required a “GPS tracking leg monitor, with a 6:00 A.M. to 10:00 P.M.
schedule.”  This is the only condition which the State alleged Woodson to have
violated.

          Diantha Roberts installed Woodson’s
leg monitor on November 24, 2004.  Roberts testified that she tried to install
the leg monitor at the jail where Woodson was transported to be released on
community supervision after sentencing.  The installation involved attaching a
leg monitor to Woodson’s ankle which was not to be removed and attaching a
waist unit to his belt which was to be removed only at night (from 10:00 p.m.
to 6:00 a.m.) when it was to be plugged into a base to be recharged.  However,
Roberts was unable to finish installing the monitoring system at the jail
because she could not establish a connection with the tracking satellite.[6]

          Roberts drove Woodson to the community
supervision office to complete installation.  There she was able to establish
the connection with the satellite and finish the installation.  Roberts
explained Woodson’s responsibilities to him concerning the electronic
monitoring equipment, namely that (1) he was to wear the leg monitor at all
times, (2) he was to charge the waist unit from 10:00 p.m. to 6:00 a.m. each
night, and (3) he was to wear the waist unit from 6:00 a.m. to 10:00 p.m. each
day.  Although there was some initial confusion about how far Woodson could
venture from the waist unit when it was charging at night, Woodson testified
that he understood by December 10, 2004[7]
that he was to go no farther than 300 feet from the unit when it was charging.          

          Woodson admitted to community
supervision officer Bob Barnes that he had violated the electronic monitoring
condition of his community supervision in at least two respects.  First,
Woodson admitted that he had left the waist unit in a friend’s car on one
occasion.  And second, Woodson admitted that he had left the waist unit in his
house when he went to a neighbor’s house.

          Woodson also conceded in
cross-examination that he had violated the electronic monitoring condition of
his community supervision.

          Therefore, based on Woodson’s own
testimony and his admissions to Barnes, we cannot say that the court abused its
discretion by revoking Woodson’s community supervision.  See Cantu v. State,
112 S.W.3d 270, 275 (Tex. App.—Corpus Christi 2003, no pet.); Anthony v.
State, 962 S.W.2d 242, 246 (Tex. App.—Fort Worth 1998, no pet.).  Accordingly,
we overrule Woodson’s first point.

Because the record contains sufficient evidence
to support the court’s decision to revoke Woodson’s community supervision, we
need not address Woodson’s third point.  See Tex. R. App. P. 47.1.  We affirm the judgment.

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed March 8, 2006

Publish

[CR25]









[1]
          Woodson also contends that
section 42.072 is “overbroad” in the statement of his second point.  However,
virtually the entirety of the discussion in his brief regarding the second
point is devoted to the issue of vagueness, and Woodson presents no argument or
authority on the issue of overbreadth.  Accordingly, we address only the
argument that the statute is unconstitutionally vague.





[2]
          However, a “reasonable person”
standard may not save a statute which prohibits a broad range of conduct.  See
Long v. State, 931 S.W.2d 285, 290 n.4 (Tex. Crim. App. 1996).

 





[3]
          Section 22.041(a) provides, “In
this section, ‘abandon’ means to leave a child in any place without providing
reasonable and necessary care for the child, under circumstances under which no
reasonable, similarly situated adult would leave a child of that age and
ability.”  Tex. Pen. Code Ann. § 22.041(a)
(Vernon Supp. 2005) (emphasis added).  

 

            Section 22.041(e) provides, “An offense under
Subsection (b) is a felony of the second degree if the actor abandons the child
under circumstances that a reasonable person would believe would place
the child in imminent danger of death, bodily injury, or physical or mental
impairment.”  Id. § 22.041(e) (Vernon Supp. 2005) (emphasis added).

 





[4]
          Section 31.11(a)(2)(B) provides
that “[a] person commits an offense if the person  .  .  .  possesses, sells,
or offers for sale tangible personal property and  .  .  .  a reasonable
person in the position of the actor would have known that the serial number
or other permanent identification marking has been removed, altered, or
obliterated.”  Id. § 31.11(a)(2)(B) (Vernon 2003) (emphasis added).

 

            

            





[5]
          Section 31.09 provides:

 

                   When amounts are obtained in
violation of this chapter pursuant to one scheme or continuing course of
conduct, whether from the same or several sources, the conduct may be
considered as one offense and the amounts aggregated in determining the grade
of the offense.

 

Tex.
Pen. Code Ann. § 31.09
(Vernon 2003) (emphasis added).

 





[6]
          Roberts explained that there was
too much concrete and steel in the jail walls to allow for a connection.

 





[7]
          Woodson testified that there was
some initial confusion about whether he could go 300 yards or 300 feet from the
waist unit while it was charging.  Nevertheless, he testified that Roberts and
a community supervision officer made it clear to him on December 10 that he was
to go no farther than 300 feet.