**Affirmed and Opinion filed April 15, 2014**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00969-CR

**JOHN M. PERONE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law Number 9
Harris County, Texas
Trial Court Cause No. 1789871**

## O P I N I O N

In this appeal, we consider whether two forms of communication — (1) text messages and (2) communications made via an application that enables a telephone to be used for video calls — may be considered telephone communications within the meaning of the prohibition against harassment by telephone communication contained in section 42.07(a)(4) of the Texas Penal Code. Appellant John M. Perone challenges the sufficiency of the evidence supporting his conviction for misdemeanor harassment based on evidence of telephone calls, text messages, and

video calls that he sent to his former spouse. We determine that the evidence is sufficient to support his conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by information with the offense of harassment by making repeated telephone or electronic communications to the complainant, his former spouse, intended and reasonably calculated to harass, annoy, alarm, abuse, torment, embarrass, and offend her. Appellant pleaded "not guilty" to the charged offense.

At trial, the State presented evidence that appellant and the complainant married in 2005 and had two children during the course of their marriage. They filed a petition for divorce in 2008, but reconciled before the divorce became final. They later filed a second petition for divorce, and they were divorced in May 2010. Despite the divorce, the complainant and appellant maintained a sexual relationship until August 2011. That month, the complainant told appellant that she wanted to "take sex out of the equation."

After the complainant communicated this decision to appellant, appellant sent her repeated communications in the form of text messages, telephone calls, and FaceTime communication, a telephone application that allows users to conduct video calls. The complainant testified that she felt harassed by the communications, which included degrading messages and indecent images, including appellant exposing his genitals. In October 2011, she reported appellant's communications to law enforcement, and he was arrested shortly thereafter.

The jury found appellant guilty as charged in the information. The trial court sentenced appellant to confinement in the Harris County Jail for 180 days

and assessed a fine of $1,000. The trial court ordered appellant's term of confinement suspended and placed him on community supervision for two years, ordering him to serve five days in jail as a condition of probation.

Appellant timely filed this appeal, in which he challenges the sufficiency of the evidence supporting his conviction.

## ANALYSIS

In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the misdemeanor offense of harassment if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, (1) he causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy,

alarm, abuse, torment, embarrass, or offend another; or (2) he sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another. *See* Texas Penal Code § 42.07(a) (West 2011).

Although the conduct for committing harassment by electronic or telephone communication may be different, the two methods set forth in the statute are different manners and means of committing the same offense, not distinct and separate offenses. *See Lewis v. State*, 88 S.W.3d 383, 394 (Tex. App.—Fort Worth 2002, pet. ref'd) (holding that the descriptions of harassment in section 42.07[1] were different manners and means of committing offense of harassment). Accordingly, the evidence is sufficient to uphold appellant's harassment conviction if, under the applicable standard of review, a rational juror could find beyond a reasonable doubt that appellant committed this offense by either means. *See id*. at 389.

In analyzing the sufficiency of the evidence, we note that no Texas court yet has explicitly addressed in a published opinion whether a text message or video call constitutes a telephone communication under section 42.07(4) or an electronic communication under section 42.07(7), or both. Text messages are a type of written communication that can be exchanged between various types of devices, for example, between two cell phones.[2] The sender initiates the message by entering it into the device and sending it. The message is later transmitted to the recipient's device. We conclude that, if text messages are exchanged between two telephones, they are communications between telephones, and thus are telephone communications under section 42.07(a)(4). The record in this case demonstrates

---

[1] Unless otherwise expressly stated, all statutory references in this opinion are to the Texas Penal Code.

[2] *See* Katharine M. O'Connor, :O OMG They Searched My Txts: Unraveling the Search and Seizure of Text Messages, 2010 U. Ill. L. Rev. 685, 688–89 (2010) (explaining how text messages work).

that appellant and the complainant exchanged text messages between their telephones.

FaceTime is an application that allows individuals to make video calls from telephones.[3] FaceTime also may be run from other electronic devices.[4] In this case, the record shows that appellant and the complainant used the FaceTime application on their telephones. Accordingly, because these communications were between telephones, they are telephone communications under section 42.07(a)(4). We need not, and do not, address the extent to which text messages or video calls may constitute electronic communications under section 42.07(a)(7).

The State presented evidence that on August, 11, 2011, the complainant informed appellant she wanted to discontinue their sexual relationship. The complainant testified that after this conversation, appellant sent her a series of text messages. Copies of these messages were admitted into evidence at trial. Between August 11th and October 27th, appellant sent the complainant frequent text messages; sometimes he texted her multiple times in a day for several days in a row, but there is also one span of eleven days without a single message. The complainant testified that during this time appellant also called her by telephone and communicated with her using FaceTime for video calls. The record reflects

---

[3] *See* Jenna Charlotte Spatz, SCHEDULED SKYPING WITH MOM OR DAD: COMMUNICATIVE TECHNOLOGY'S IMPACT ON CALIFORNIA FAMILY LAW, 31 LOY. L.A. ENT. L. REV. 143, 144 (2011) (noting that the Apple iPhone 4 contains a video-calling application, "FaceTime," which allows individuals to experience events "through the lens of real-time, virtual technology" although they are not physically present).

[4] *See VirnetX Inc. v. Apple Inc.*, 925 F.Supp.2d 816, 830–31 (E.D. Tex. 2013) (noting, in context of patent infringement claim, that 1) FaceTime feature can operate either via a relay server or via a network address translator, or any device containing a network address translator functionality, 2) Apple devices, such as iPhones, can be located behind other devices that have network address translator functionality, and that 3) both e-mail addresses and telephone numbers can be used as identifiers to locate devices in lieu of an IP address when the device is behind a network address translocator); Bryan H. Choi, THE ANONYMOUS INTERNET, 72 MD. L. REV. 501, 567 n.261 (noting that many computers sit behind network address translators).

that appellant's communications with the complainant were repeated. *See Blount v. State*, 961 S.W.2d 282, 284 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (determining that evidence of at least four phone calls in a little over a month was sufficient evidence that the calls were repeated).

The content of the messages varies. Some of the messages relate to parenting logistics. Other messages contain references to appellant's dating and sexual activity, including photos of other women and messages other women sent to him. In some messages, appellant criticizes the complainant's prior sexual performance, appearance, and morality. In another set of messages, appellant solicits sex from the complainant.

The complainant testified that, during the period appellant was sending her these text messages, he also was exposing his genitals to her in video calls over FaceTime. The complainant stated she told appellant these acts "disgusted" her and requested that he stop. She noted one occasion on which appellant exposed his genitals during a video call, after she put the phone on the ground with the FaceTime application open so that he could observe the children opening their Halloween candy and talk with them. She stated that she grabbed the phone before the children saw, but that they easily could have looked at the phone screen and seen appellant's genitals if she had not noticed the video image first.

Appellant asserts that the evidence is insufficient to prove that he intended his communications to harass, annoy, alarm, abuse, torment, embarrass, or offend the complaint or that they were made in a manner reasonably calculated to have any of those effects. Several Texas courts have analyzed section 42.07(a)(4) in the context of repeated telephone calls, but today we must analyze 42.07(a)(4) in the context of telephone communication by text message and video calling. In the context of repeated telephone calls, Texas courts have explained that the mere making of the calls is not, by its nature, criminal, nor is it a criminal act merely

6

because of the circumstances during which it is conducted. *See Blount*, 961 S.W.2d at 284. The Legislature clearly intended for an individual to be criminally responsible for the crime of telephone harassment only when the actor intended, that is the actor consciously desired, the result of the actions. *Id.*; Tex. Penal Code Ann. § 6.03(a) (West 2011).

To violate section 42.07(a)(4) by making repeated telephone calls, the actor must: 1) have the specific intent to inflict harm on the recipient by harassing, annoying, alarming, abusing, tormenting, or embarrassing the recipient of the telephone call, 2) make repeated telephone calls to the victim, and 3) make those telephone calls anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend an average person. *See Scott v. State*, 322 S.W.3d 662, 669 (Tex. Crim. App. 2010) (construing the elements of section 42.07(a)(4) in the context of charges involving making telephone calls in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend an average person).

An actor may violate section 42.07(a)(4) even if he does not speak. *Id.* Intent may be inferred from the acts, words, or conduct of an accused, including the circumstances surrounding the acts in which the accused engages. *Salisbury v. State*, 867 S.W.2d 894, 897 (Tex. App.—Houston [14th Dist.] 1993, no pet.) Although these statements of law have been discussed in the context of telephone calls, they elucidate requirements of section 42.07(a)(4) that apply equally to other telephone communications. *See* Tex. Penal Code Ann. § 42.07(a)(4).

Appellant argues that 1) the "playful" tenor and content of the video calls and text messages do not support the conclusion that he intended to inflict harm, 2) his prior relationship with appellant, which included a marriage and several break-ups and reconciliations, militates against the conclusion that he intended to inflict harm, 3) the complainant's responses do not convey any desire for him to end

7

communications with her, and 4) the complainant's failure to ask him to stop communicating with her show that he did not intend to inflict harm.

Although the record shows that the complainant responded to one text message with the response "Lol,"[5] she also testified that the response was "probably sarcastic." Aside from this response, the communications submitted into evidence show appellant criticizing the complainant and flaunting his interactions with other women. The text exchanges show that the complainant initially provided short responses to appellant's text messages and that she continued to respond to his requests relating to retrieving his property, requests to speak with their children, and text messages related to their children.

As the communications progressed, however, the complainant stopped responding positively even to appellant's messages regarding logistics. The complainant's text messages show she informed appellant that she wished he would find someone else and leave her alone. Appellant's text messages demonstrate that he knew the complainant was trying to avoid his communications by "blowing [him] off" and repeatedly "hanging up." The messages show that he at least had considered the possibility that his previous communications had caused her to avoid his communication attempts.

Although the evidence showed that appellant and the complainant previously had separated and reconciled on several occasions, in his communications to the complainant, appellant stated that he was looking for his next wife, he never wanted the complainant back, and he loved not being married to the complainant. The complainant responded that she would not get back together "even if [appellant] were the last man on earth." To the extent the evidence was contradictory, the jury was the exclusive judge of the weight and credibility of the

---

[5]According to her testimony, the complainant used "Lol" as an abbreviation for the phrase "Laugh out loud."

8

evidence. *See Fuentes*, 991 S.W.2d at 272.

Even if the jury had determined that the complainant was not clear in requesting appellant to stop texting her and had determined that this lack of clarity meant appellant did not intend to inflict harm on her, the jury could have determined that appellant intended to inflict harm on the complainant by exposing his genitals during the video call. With respect to this behavior, the complainant testified she specifically requested that appellant stop and informed him that it "disgusted" her. She also communicated her fear that the behavior would harm their children. Despite the knowledge that the behavior "disgusted" the complainant, and the awareness that she was seeking to avoid FaceTime contact with the appellant as much as possible without infringing on his rights to speak with his children, appellant continued to engage in the conduct, repeating the unwanted communications to the complainant. *See Blount*, 961 S.W.2d at 284–85.

Accordingly, under the applicable standard of review, we conclude that a rational jury could have found beyond a reasonable doubt that appellant intended to harass, annoy, alarm, abuse, torment, or embarrass the complainant and that appellant made repeated telephone communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend the complainant. *See id*. The evidence is legally sufficient to support appellant's harassment conviction. Accordingly, appellant's sole issue is overruled.

## CONCLUSION

We conclude that the text messages and video calls exchanged between appellant and the complainant are telephone communications within the meaning of section 42.07(a)(4) and that the evidence is legally sufficient to support appellant's conviction for harassment under this provision of the Penal Code.

The trial court's judgment is affirmed.


/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Boyce and Jamison.

Publish — TEX. R. APP. P. 47.2(b).