In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-479 CR


____________________



TRAVUNIS BROOKS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 217th District Court


Angelina County, Texas


Trial Cause No. 20,137






OPINION


 On October 1, 1998, Travunis Brooks was granted "shock probation" by the trial
court for a term of ten years. See Tex. Code Crim. Proc. Ann. art. 42.12, § 6 (Vernon
Supp. 2004-2005). Prior to this, Brooks had waived indictment and pleaded guilty to
having committed the offense of "Engaging in Organized Criminal Activity - 3rd Degree."
Among the terms and conditions of Brooks' community supervision order were the
following: 

 (a) Commit no offense against the laws of this State or of any other State or
of the United States; . . .


 (k) Pay a supervision fee through the County Community Supervision &
Corrections Department as follows: $30.00 PER MONTH. . . .


 (o) Other:


 If Defendant has not obtained his G.E.D., Defendant is
ORDERED to attend adult education classes and
complete the requirements for a G.E.D. within 2 years
of date of judgment, as instructed by the adult
community supervision officer in charge of the case,
provide the officer with satisfactory written proof of
completion, including a diploma, and be responsible for
any costs of the classes. . . .



 Subsequently, the State filed an application for revocation of Brooks' community
supervision alleging, inter alia, violation of the three conditions of probation set out above. 
Following an evidentiary hearing, the trial court found Brooks violated the above-three
conditions and imposed sentence at seven years incarceration in the Texas Department of
Criminal Justice - Correctional Institutions Division. Brooks appeals the revocation of his
community supervision complaining of the lack of legally and factually sufficient evidence
for the trial court to have found a violation of the three conditions in question. 

 At the outset, we note that Brooks appears to be mistaken with regards to the
applicable standard of review for revocation of community supervision. Of his six
appellate issues, three appear to include a factual insufficiency complaint, with citation to
Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996), as authority for his position. 
Several of our sister courts, however, have held that, due to the unique factors involved
in a revocation proceeding, including the trial court's role as the sole trier of facts, a
Clewis analysis is not appropriate; rather, the traditional abuse of discretion standard is
applied. See Cochran v. State, 78 S.W.3d 20, 27 (Tex. App.--Tyler 2002, no pet.);
Becker v. State; 33 S.W.3d 64, 65-66 (Tex. App.--El Paso 2000, no pet.); Allbright v.
State, 13 S.W.3d 817, 818 (Tex. App.--Fort Worth 2000, pet. ref'd); Brumbalow v. State,
933 S.W.2d 298, 299-300 (Tex. App.--Waco 1996, pet. ref'd). These holdings recognize
the fact that a revocation proceeding is not a "criminal proceeding" in the ordinary sense
because, like a parole revocation hearing, a community supervision revocation hearing
does not constitute a stage of a criminal prosecution even though it results in the
probationer's loss of conditional liberty. Becker, 33 S.W.3d at 65 (citing Gagnon v.
Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)). Furthermore, a
community supervision revocation proceeding is neither a criminal nor a civil trial, but
rather an administrative hearing. See Cobb v. State, 851 S.W.2d 871, 873 (Tex. Crim.
App. 1993); Kimball v. State, 119 S.W.3d 463, 465 (Tex. App.--Beaumont 2003, no pet.). 
In Liggett v. State, 998 S.W.2d 733, 735-36 (Tex. App.--Beaumont 1999, no pet.), we
also declined to apply the Clewis "factual sufficiency" standard of appellate review to
appeals of community supervision revocation. Therefore, our review of the instant case
will be under the traditional "abuse of discretion" standard, as set out below. Issues two,
four, and six are overruled.

 At a revocation proceeding, the State has the burden of establishing the alleged
violations by a preponderance of the evidence. Cobb, 851 S.W.2d at 873. Appellate
review of an order revoking community supervision is limited to determining whether the
trial court abused its discretion. See Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim.
App. 1984). Generally, however, the trial court possesses very broad discretion in
supervising those defendants who are placed upon community supervision. See generally
Tex. Code Crim. Proc. Ann. art. 42.12 (Vernon Supp. 2004-2005); see also Speth v.
State, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999) ("Consistent with its broad
discretionary powers in deciding whether to grant community supervision, a trial court
likewise has broad discretion in determining the conditions to be imposed."). Likewise,
a trial court has broad discretion at the conclusion of revocation proceedings to continue,
extend, modify, or revoke a defendant on community supervision. See Tex. Code Crim.
Proc. Ann. art. 42.12, § 21(b) (Vernon Supp. 2004-2005); Ex parte Tarver, 725 S.W.2d
195, 200 (Tex. Crim. App. 1986). 

 As noted above, the State's burden in a revocation proceeding is to prove the
alleged violations of the community supervision order by a preponderance of the evidence. 
Cobb, 851 S.W.2d at 873. The trial court is the sole trier of facts, judge of the credibility
of witnesses, and decides what weight to be given to the testimony. Cochran v. State, 78
S.W.3d at 28. A reviewing court examines the record in the light most favorable to the
trial court's ruling. See Jackson v. State, 645 S.W.2d 303, 304 (Tex. Crim. App. 1983). 
Proof of a violation of a single term or condition of community supervision is sufficient
to support a trial court's decision to revoke. See Moore v. State, 605 S.W.2d 924, 926
(Tex. Crim. App. 1980). If there is some evidence to support the trial court's finding of
a single violation, the revocation order will be upheld. Cochran, 78 S.W.3d at 28; Becker,
33 S.W.3d at 66-67. 

 As noted above, the trial court found that Brooks committed three violations of his
community supervision order. The first violation alleged by the State was an assault
committed on or about May 27, 2003. Several witnesses testified to the altercation
between Brooks and the complainant, L.W., on the night in question. Brooks also took
the stand in his defense and admitted striking the first blow in the fight with L.W. Brooks
also admitted to hitting the complainant with his (Brooks') vehicle. Brooks' contended that
striking the first blow upon L.W. was solely for purposes of self-defense. His testimony
also implied that hitting L.W. with the vehicle was done accidently. Brooks' self-defense
assertion, however, rings a bit hollow in light of his cross-examination testimony: 

 [Q].[State] Now, when you're first having this confrontation with [L.W.],
you said several times - - correct me if I got this wrong - - that [L.W.] was
acting like he wants to hit you?


 A.[Brooks] Yes, sir.


 Q. What exactly did he do?


 A. Like as he - - when he approached me, he approached me with his fist
balled up.


 Q. And then he got in your face?


 A. With a lot of tension. Yes, sir.


 Q. And then, what did he do?


 A. He acted as in a motion as if he was fixing to proceed to swing at me.


 Q. But he didn't, did he?


 A. No, sir.


 Q. You swung at him?


 A. Yes, sir.


 Q. All right. And you could have very easily just gotten in your vehicle,
closed the door and locked it, couldn't you?


 A. That's what I proceeded to do as when he done that.


 Q. Okay. I thought you said you swung first?


 A. That's what I proceeded to do was get into my car when he done that.


 Q. When he acted like he was going to hit you?


 A. Yes, sir.


 Q. Then how did you end up throwing the first punch if you were getting
into the car and locking the door?


 A. What else left do I have to do, stand there and let him just hit me?


 Q. Well, I'm not clear on what you were doing. Did you get into the car
and lock the door, or did you remain out and throw the first punch?


 A. No. I was proceeding to get in my car when he done that. But as he
done that, I did not get all the way in my car because I was not about to just
let him hit me without me at least defending myself.


 Q. Okay. But if you had wanted to, instead of throwing the first punch, you
could have just rolled the window up, locked the door and drove off,
couldn't you?


 A. You don't have that much time.


 Q. But you had enough time to throw the first punch?


 A. It all happened so fast, you can't really just put a time limit on it. 


 As noted above, the trial court is the sole trier of the facts, judge of the credibility
of witnesses, as well as judge of what weight to be given to the testimony. See Cochran,
78 S.W.3d at 28. Under the facts as related by Brooks, the trial court could have found
Brooks' subjective belief of apparent danger from L.W. was not reasonable, making
Brooks' "pre-emptive strike" on L.W. an assault. See Hamel v. State, 916 S.W.2d 491,
493 (Tex. Crim. App. 1996); Courtney v. State, 908 S.W.2d 48, 52 (Tex. App.--Houston
[1st Dist.] 1995, pet. ref'd). 

 The second and third violations found by the trial court were that Brooks failed to
pay certain court-ordered community supervision fees, and failed to acquire his G.E.D. 
The State elicited testimony from Brooks' probation officer, Mark Hogberg, to the effect
that Brooks' community supervision order required him to obtain either a high school
diploma or a G.E.D. (General Education Diploma) (1) during his term of community
supervision. Hogberg testified that he had no knowledge of Brooks having obtained a
G.E.D. During his testimony, Brooks admitted that he did not finish the G.E.D. program.
 Hogberg also testified that Brooks was ordered to pay a $30 community supervision
fee each month. Hogberg testified that Brooks failed to pay the fees for the months of
October through December, 2001; January through December, 2002; and January through
June, 2003. Hogberg further stated that Brooks was aware of his obligation to pay the fees
and was referred to a "job program" many times. Hogberg explained that Brooks would
obtain jobs and lose jobs, changing jobs on a regular basis. Brooks testified that it was
difficult for him to obtain full-time employment and that he was focusing on trying to pay
traffic tickets so as to keep warrants from issuing for his arrest, as well as on paying $25
per week for his court-ordered Batterers' Intervention Program. Brooks requested that he
be continued on community supervision. 

 The appellate record indicates that Brooks was initially placed on community
supervision in 1998. Since that time, the State has filed three separate motions to revoke
Brooks' community supervision, with the trial court continuing Brooks on community
supervision after amending its terms and conditions on two of those occasions. The State's
third motion to revoke resulted in the revocation under instant review. 

 Concerning Brooks' failure to acquire his G.E.D. as ordered by the trial court,
Brooks argues it is an unreasonable condition of probation that was impossible to perform
and, therefore, cannot be the basis for revoking his community supervision. However, a
defendant whose community supervision is revoked may only appeal from the revocation,
not the validity or invalidity of the terms and conditions of the probation order entered
months or years before. See Tex. Code Crim. Proc. Ann. art. 42.12, § 23(b) (Vernon
Supp. 2004-2005); Corley v. State, 782 S.W.2d 859, 860 (Tex. Crim. App. 1989);
Hawkins v. State, 112 S.W.3d 340, 343 (Tex. App.--Corpus Christi 2003, no pet.). 

 As for the failure to pay community supervision fees as ordered, Brooks now raises
the defense of inability to pay. See Act of June 1, 1997, 75th Leg., R.S., ch. 668, § 4,
1975 Tex. Gen. Laws 2253, 2263 (current version at Tex. Code Crim. Proc. Ann. art.
42.12, § 19(h) (Vernon Supp. 2004-2005). Stanfield v. State, 718 S.W.2d 734, 738 (Tex.
Crim. App. 1986) (State has the burden to prove an alleged failure to pay fees or costs was
intentional). However, Brooks did not raise nor argue this as a defense to the trial court. 
As we find no abuse of discretion by the trial court in its finding of violations of the two
previously addressed allegations, we need not examine whether Brooks adequately raised
the inability to pay defense. We do note that, from the testimony of Mark Hogberg, the
trial court could have inferred Brooks' failure to pay his fees was intentional by Brooks'
failure to remain employed with one employer for very long, coupled with the evidence
that Brooks made no payments for the entire year of 2002, and the first six months of
2003. 

 At any rate, we find the trial court did not abuse its discretion in revoking Brook's
community supervision and imposing the previously suspended sentence of incarceration. 
Issues one, three, and five are overruled. The judgment of revocation is affirmed. 

 AFFIRMED.



 ____________________________

 STEVE MCKEITHEN

 Chief Justice 



Submitted on November 18, 2004

Opinion Delivered December 22, 2004

Publish


Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. See Roberson v. State, 71 S.W.3d 830, 832 (Tex. App.--Texarkana 2002, no pet.).