ACCEPTED
03-15-00095-CR
6812878
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/4/2015 5:35:02 PM
JEFFREY D. KYLE
CLERK

**No. 03—15—00095—CR**

IN THE TEXAS COURT OF APPEALS

THIRD DISTRICT

AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/4/2015 5:35:02 PM
JEFFREY D. KYLE
Clerk

---

**JUAN LEAL v. THE STATE OF TEXAS**

Appeal from Cause Number D-1-DC—13—300082
299th Judicial District Court, Austin, Travis County, Texas
Honorable Karen Sage, Judge Presiding

---

**APPELLANT'S BRIEF**

---

TO THE HONORABLE THIRD COURT OF APPEALS:

Comes now Paul M. Evans, appointed counsel for Appellant Juan Leal, and files this, his Appellant's Brief, in compliance with the Texas Rules of Appellate Procedure.

Respectfully submitted,

___/s/ Paul M. Evans_____
Paul M. Evans
Attorney for Appellant
SBN 24038885
811 Nueces Street
Austin, Texas 78701
(512) 569-1418
(512) 692-8002 FAX
paulmatthewevans@hotmail.com

1

## Identities of the Parties and Counsel

Presiding Judge:                    Honorable Karen Sage

Appellant:                         Juan Leal

Trial Counsel:                    Stephen M. Orr
1107 Nueces Street
Austin, TX 78701

Appellate Counsel:            Paul M. Evans
811 Nueces Street
Austin, Texas 78701

Appellee:                        State of Texas

Trial Counsel:                    Mary Farrington
Yvonne Patton
Assistant District Attorneys
Travis County District Attorney
P.O. Box 1748
Austin, Texas 78767

Lead Appellate Counsel:      Rosemary Lehmberg
District Attorney
c/o Appellate Division
Travis County District Attorney
P.O. Box 1748
Austin, Texas 78767

# Table of Contents

Identity of Parties and Counsel                                      2

Table of Contents                                                   3

Index of Authorities                                                3

Statement of the Case                                               5

Issue Presented                                                     6

Statement of Facts                                                  7

Summary of Arguments                                               23

Issue Number One                                                   24

Prayer                                                             29

Certificate of Service                                             30

Certificate of Compliance                                          31

# Index of Authorities

## Federal Constitution

Fourth Amendment…………………………………………………….…7-11, 19

Sixth Amendment…………………………………………...……….8, 12, 17, 20

## Federal Cases

*Arizona v. Gant*, 556 U.S. 332 (2009)………………………………..………9

**Texas State Constitution**

Article I, Section 9……………………………….…………7-9, 19

**Texas State Statutes**

Code of Criminal Procedure § 38.23………………….....……7, 9, 19

Code of Criminal Procedure § 42.12, Sec.5………...…………...…….6, 25

Code of Criminal Procedure § 42.12, Sec.21……………..….………25

Penal Code § 12.42……………………………………...…….…6, 29

Penal Code § 22.01…………………………………………..……6, 29

**Texas Cases**

*Antwine v. State*, 268 S.W.3d 634 (Tex.App.—Eastland 2008,
pet. ref'd)………………………………………………….………25

*Barrett v. State*, 630 S.W.2d 335 (Tex.App.—Houston [14th Dist.]
1982, no pet.)……………………………………………………..28

*Brooks v. State*, 153 S.W.3d 124 (Tex. App.—Beaumont 2004,
no pet.)…………………………………………………………27

*Caddell v. State*, 605 S.W.2d 275 (Tex.Crim.App. 1980)…………….26

*Cantu v. State*, 842 S.W.2d 667 (Tex.Crim.App. 1992)…………….26

*Cardona v. State*, 665 S.W.2d 492 (Tex.Crim.App. 1984)…....…….26-7

*Cobb v. State*, 851 S.W.2d 871 (Tex.Crim.App. 1993)…………..….26-7

*Coffey v. State*, 979 S.W.2d 326 (Tex.Crim.App. 1998)…………..….25

*Diaz v. State*, 516 S.W.2d 154 (Tex.Crim.App. 1974)……………….27

*Greer v. State*, 999 S.W.2d 484 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd)…………………………………………………….27

*Hacker v. State*, 389 S.W.3d 860 (Tex.Crim.App. 2013)…………26-7

*Harris v. State*, 160 S.W.3d 621 (Tex. App.—Waco 2005, pet. dism'd)…………………………………………………….27

*Hart v. State*, 264 S.W.3d 364 (Tex.App.—Eastland 2008, pet. ref'd)…………………………………………………….26-7

*Jones v. State*, 571 S.W.2d 191 (Tex.Crim.App. 1978 [Panel Op.])………………………………………………….27

*Ex parte Madding*, 70 S.W.3d 131 (Tex.Crim.App. 2002)………....25

*Moore v. State*, 605 S.W.2d 924 (Tex.Crim.App. 1980)………...….26

*Rickels v. State*, 202 S.W.3d 759 (Tex.Crim.App. 2006)…………...26

*Solis v. State*, 589 S.W.2d 444 (Tex.Crim.App. 1979)………….…26

*Taylor v. State*, 131 S.W.3d 497 (Tex.Crim.App. 2004)…………...25

## Statement of the Case

Appellant Juan Leal was originally charged by indictment with one count of Assault Family Violence, enhanced by prior convictions for the same, and further enhanced by a prior felony conviction, thereby making the offense punishable as a second degree felony. **RR2** 7-8; **CR1** 7-8; *see* Tex. Penal Code §§ 12.42(a), 22.01(b)(2),(A). Appellant entered into a plea bargain agreement with the State,

whereby he entered a plea of guilty and was placed on a term of deferred adjudication community supervision for a period of three (3) years. **CR1** 9-26; *see* Tex.Code Crim.Proc. §42.12, Sec. 5. Subsequently, the State filed a "Motion to Proceed with an Adjudication of Guilt," followed by two amended motions containing additional alleged violations of the terms of community supervision. **CR1** 44, 47, 50-2.

In a hearing before the trial court, Appellant entered a plea of not true to the allegations contained in the State's second amended motion. **RR2** 7-8; **CR1** 50-2, 64, 70. After hearing evidence, the trial court found that Appellant violated several terms and conditions of his community supervision, and the court adjudicated his guilt. The trial court then proceeded to assess a term of eighteen (18) years in the Institutional Division of the Texas Department of Criminal Justice. **RR2** 149-54; **CR1** 64, 70-2. The trial court certified Appellant's right to appeal, and he filed timely notice of appeal. **CR1** 62, 80. This appeal followed.

## Issue Presented

The trial court's "Judgment Adjudicating Guilt" should be modified, in that the written judgment alleges that the trial court found two violations of the terms and conditions of Appellant's probation that were not reflected by the trial court's oral pronouncement of judgment. **RR2** 149-52; **CR1** 70-2.

6

## Statement of Facts

The Second Amended Motion to Proceed with an Adjudication of Guilt contained 23 separate alleged violations of the terms and conditions of Deferred Adjudication. Appellant entered a plea of not true to these allegations. The trial court held an evidentiary hearing on the State's motion. **RR2** 7-8; **CR1** 50-2, 64, 70. At the outset of the hearing, the State moved to amend a "typo" in the motion, namely, the use of the name "Andrea Leal" where "Angela Budzinski" was intended. The trial court allowed the amendment over trial counsel's objection. **RR2** 8-9; **CR1** 51.

Austin Police Department Sergeant Greg White testified he effected a traffic stop on Appellant on the afternoon of February 24, 2014. White testified he observed two traffic violations, excessive amplified music from a motor vehicle and changing traffic lanes within an intersection. Trial counsel objected to the legality of the traffic stop and obtained a running objection, citing the protections of the Fourth Amendment of the United States Constitution, Article I, Section 9 of the Texas Constitution, and Tex. Code Crim. Proc. § 38.23. **RR2** 10-16. White stopped Appellant and obtained his identification. After checking on Appellant's name and involvement, White testified he learned that Appellant had a gang association, past narcotics arrests, and a history of concealing narcotics in his vehicle. Citing safety, White conducted a frisk of Appellant and his passenger

compartment. Upon entering the car, White detected the odor of burning marijuana, and he saw a glass marijuana pipe with residue in the center console. White felt he had probable cause at that point to search the car for illegal substances or contraband. **RR2** 13-14.

White testified he found a magnetic box with suspected cocaine residue in the center console, a digital scale in the driver's door, another scale in the back seat, and a black jacket containing a number of empty baggies. **RR2** 14-17; **RR3** SX # 2-6. White issued Appellant citations for driving with license invalid, no driver's license, amplified music from a motor vehicle, and possession of drug paraphernalia. White identified Appellant in court. The trial court admitted a certified copy of Appellant's conviction for possession of drug paraphernalia over objections lodged by trial counsel: that the conviction was obtained in violation of the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution, and that the document did not afford Appellant his right of confrontation under the Sixth Amendment of the United States Constitution. **RR2** 17-18; **RR3** SX # 1. On cross-examination, trial counsel questioned White about the traffic stop. White confirmed there were no passengers in the car. White did not know if anyone else had access to the vehicle. White confirmed that Appellant did not grant him consent to search the car. White did not know how long the items found in the car had been there. **RR2** 19-21. On redirect and recross examination,

White testified the items found in the car were consistent with drug paraphernalia. **RR2** 21-2.

Austin Police Officer Michael Schultheis testified he was assigned to the organized crime division and the firearms unit. On May 22, 2014, Schultheis was instructed to locate Appellant and arrest him pursuant to outstanding traffic warrants. Schultheis identified Appellant in court. Schultheis saw Appellant driving on that date and effected a traffic stop in a convenience store parking lot. White placed Appellant into custody and handcuffed him. **RR2** 22-6. When Schultheis was asked if he searched Appellant incident to his arrest, trial counsel objected on grounds provided by the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution, and Tex. Code Crim. Proc. § 38.23. Trial counsel also argued the search was not tied to the reason for the stop and arrest, citing *Arizona v. Gant*, 556 U.S. 332 (2009). These objections were overruled, and trial counsel obtained a running objection to any evidence obtained from Appellant's person or his car. **RR2** 26-7. Schultheis testified he found a black zippered bag in the front left pocket of Appellant's shorts, containing a bag of what Schultheis recognized to be cocaine, as well as a bag containing what Schultheis recognized to be methamphetamine. A videotape

of the traffic stop was introduced into evidence over objection. **RR2** 27-8; **RR3** SX # 11.[1]

On cross-examination, trial counsel asked how the decision was made to stop and arrest Appellant. Schultheis confirmed he did personally observe Appellant driving and was able to positively identify him prior to making the stop. Schultheis described the events leading to the stop. He testified he saw a passenger in the car. Schultheis verified that he was aware of Appellant's outstanding warrant at the time, and he confirmed he was specifically looking to find Appellant at the time in question. Schultheis could not recall how long it took for backup officers to arrive. Schultheis did not ask for Appellant's consent to search the car, as he believed he had the authority to search the car incident to Appellant's arrest. **RR2** 28-33.

Austin Police forensic chemist Ryan Forsyth testified regarding the analysis of suspected controlled substances. Forsyth tested the contents of two baggies containing a "loose compressed white powder" and another baggie containing "an off-white crystal substance." Forsyth was asked to describe the results of this testing, when trial counsel objected on the basis that the items had been obtained in violation of the Fourth Amendment of the United States Constitution. Trial counsel also objected to the lack of a chain of custody to

---

[1] *Nota bene*, there are two exhibits designated as "SX # 11." *See* **RR3**.

establish "how those got from the street to this chemist." The trial court overruled the Fourth Amendment objection but requested the State to provide more foundation on the chain of custody issue. **RR2** 34-9.

Forsyth could not identify the signatures on the property tags associated with the baggies. Forsyth testified there was an electronic chain of custody maintained by his laboratory, and it reflected that Forsyth received the items from the chemistry vault cabinet "on June 12 at 8:25." Trial counsel renewed his chain of custody objection. The trial court overruled the objection, and the items were admitted into evidence. Forsyth testified the first bag tested positive for cocaine in an amount of approximately 12.176 grams, while the second bag tested positive for methamphetamine in an amount of approximately 1.780 grams. **RR2** 39-41; **RR3** SX # 9-10. On cross-examination, Forsyth testified that these items would have been brought to the vault by an evidence technician, and Forsyth would then take the items from the vault before testing them. Forsyth did not personally know how the items in evidence were brought to the vault, and he did not personally witness their transfer. **RR2** 41-2.

Andrea[2] Leal testified she had been married to Appellant for thirteen years. The two of them had a twelve-year-old son. Andrea identified Appellant in court. Andrea confirmed she was the victim of the offense Appellant was on probation

---

[2] To avoid confusion, the present Brief will henceforth refer to Andrea Leal by her given name.

11

for, as well as the victim of a prior offense of Violation of a Protective Order that caused Appellant to go to prison. Andrea testified her maiden name was Pineda at the time of the latter offense. Andrea continued to have an on-and-off relationship with Appellant while he was on probation for the instant offense. Andrea confirmed Appellant was consistently abusive to her during the course of the relationship. Her mother often saw her with injuries, and Andrea would routinely lie about how she received them because she did not want her mother to call the police. Appellant's mother was present during some assaults, and she would urge him to stop so that he would not "end up going back to jail" because of her. **RR2** 43-6, 70-1. The State introduced certified copies of the judgment and sentence, probable cause affidavit in support of arrest, and the indictment arising from the prior conviction for Violation of a Protective Order. Trial counsel objected that these documents constituted hearsay, and that their admission denied Appellant his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution. These objections were overruled. **RR2** 70-1; **RR3** SX # 40-2.

On September 10, 2013, Andrea's mother called the police after seeing an injury caused by Appellant—Andrea thought she "had a black eye"—but Andrea did not tell them the truth about how she was injured. After "a month or so" later, Andrea began seeing Appellant again. Andrea then testified about an incident that occurred on April 8, 2014. At the time, Andrea lived with her cousin, Roxanne.

12

Appellant was supposed to take their son to school, but when he did not follow through, Andrea took him to school on the bus. Appellant called Andrea while she was returning home on the bus, and she hung up on him because she was angry he had not shown up to give their son a ride. When Andrea arrived at her apartment, Appellant was waiting in his car in the parking lot. Andrea ignored him, but he followed her to her door and continued to bang on the door after she went inside. Andrea let him in so that he would stop knocking, and the two of them went into her room. **RR2** 46-51.

Appellant began to accuse Andrea of staying up all night, doing "meth" with her cousin, who would sometimes buy drugs from Appellant. Appellant pushed Andrea on the bed and began choking her with both hands around her neck. Andrea testified she could not breathe. Appellant struck her on the side with something, and Andrea could feel blood coming down her face. Appellant got up, and Andrea ran to the shower. Appellant left while she was in the shower. Appellant called her after he left, saying he was sorry and asking her not to call the police. Appellant told Andrea he had hit her with a cell phone. Andrea suffered a "slit," "a really big knot," and a black eye. **RR2** 51-9; **RR3** SX # 23.

Andrea continued to see Appellant after this incident. Andrea testified that on April 20, 2014, Appellant had promised to bring an Easter basket for their son, but he did not. Andrea was angry about this and called him. Appellant came to get

her at Roxanne's apartment, and they went to his mother's house. On the way, Appellant was accusing Andrea of cheating on him. When they arrived, Appellant had Andrea remove her clothes so he could see if she "had been with someone." Appellant slapped Andrea, and his mother came into the room to warn him about going back to jail. Andrea testified the slap hurt and aggravated a prior injury Appellant had caused to her nose. Andrea did not report this incident right away. Appellant eventually dropped her off late at night at a store by Interstate 35, about a fifteen minute walk away from where she stayed with Roxanne. Andrea later called police about this incident, in part because she had learned that Appellant had allegedly slept with Roxanne. Andrea testified that before she called the police, she did send several text messages to Appellant, threatening to turn him in for the incident if he did not answer her calls or her requests for him to visit. Andrea testified she had received assistance from SafePlace and the County Attorney's Office. **RR2** 59-72.

On cross-examination, Andrea admitted she had used illegal drugs. She acknowledged using cocaine and methamphetamine during the period of time she had testified about. Andrea denied that this had affected her memory of the events she had recounted. Andrea admitted she had threatened Appellant, but she denied making threats "to make anything up." Andrea confirmed that she waited "a few weeks after the last assault" on April 20, 2014 before calling the police. She

admitted she used this incident as leverage to try to get Appellant to be with her and act like a father to their son. She denied doing this after previous assaults. She agreed that learning about his indiscretion with her cousin, Roxanne, was the "final straw." She had been aware of other infidelities, but this was the first time with a family member. **RR2** 73-7. On redirect, Andrea denied being high during the assaults she testified about. She affirmed that her drug use had not affected her testimony. She testified her mother had also urged her to call police on Appellant. **RR2** 77-8.

Helen Vasquez testified she was Andrea's mother. She testified she knew Appellant, she identified him in court, and she affirmed he remained married to Andrea. Vasquez never saw Appellant assault Andrea, but she came over to her house "beaten up a lot of times." The last time was when Andrea filed charges on Appellant and moved into SafePlace. Vasquez testified Andrea had a cut and a black eye. After she reported the last incident to police, Andrea told Vasquez what had happened. Vasquez had made a report to the police in September 2013, after Andrea had been beaten yet again, but Andrea refused to press charges at that time. On cross-examination, Vasquez again confirmed she had never seen Appellant assault Andrea. **RR2** 78-82.

Angela Budzinski testified she dated Appellant for about three months, beginning in September 2013, when he was already on deferred adjudication

15

probation. She identified him in court. Budzinski testified Appellant dealt cocaine during the time they were dating, and she presumed he used narcotics as well. At first, Appellant was not abusive, but around October 10, 2013, there was an incident that occurred after Budzinski came home from work. She was living with Appellant in his mother's house. On this occasion, Appellant punched Budzinski a number of times, choked her, and dragged her by the hair when she tried to get away. Budzinski suffered two black eyes. Budzinski eventually went to sleep. She called a friend the next day, Esther Herrera, who picked her up and gave her a ride to work. Budzinski covered her visible injuries with makeup. Budzinski did not report the incident to police, because she felt she had nowhere else to go. She did take pictures of her injuries that were introduced into evidence. **RR2** 82-92; **RR3** SX # 11-14.[3]

Budzinski testified she would allow Appellant to take her money and use her car as he wished because she did not "want any more problems than what had already happened." In November 2013, there was another incident. The two of them were arguing when Budzinski returned home from work, and she went outside to call the police "just to diffuse the situation." Appellant walked up and grabbed the phone with enough force to break her finger. Her friend Maria took her to the doctor for treatment the next day. The State sought to admit the certified

---

[3] As noted above, two separate exhibits were introduced as "SX # 11."

16

medical records from Budzinski's treatment. Trial counsel objected, citing the Confrontation Clause of the Sixth Amendment to the United States Constitution. The trial court received the exhibit over objection. When she went to the hospital, Budzinski did not tell the truth about what happened, because she knew she would have to go back to where she lived with Appellant. Budzinski did tell Maria what had happened. **RR2** 92-5; **RR3** SX # 22.

Appellant threatened Budzinski over reporting these matters to the police, and he told her he would face "25 to life" in prison if she did so. Budzinski did finally call the police, because they began to argue again and she did not want a similar incident to occur. Budzinski identified photos of her injuries that were admitted into evidence. She also described the extent of the injury to her finger. Appellant later threatened her for calling the police. Budzinski testified she was trying to call the police when Appellant grabbed her phone, and Appellant's actions prevented Budzinski from calling 911. **RR2** 95-101; **RR3** SX # 15-21. On cross-examination, Budzinski testified she lived at Appellant's mother's house for "about three months." She did not leave that house until the time she finally called police, in November 2013. Budzinski asserted she had nowhere else to go, although she did make money from work and she did have friends. Budzinski denied doing drugs, but she admitted she had been drinking on the night she finally

called police. She also admitted she called Appellant afterwards in order to have him bring her belongings to her at work. **RR2** 102-5.

Maria Rizo testified she was a friend of Budzinski's while she was dating Appellant. Rizo observed the injury to Budzinski's hand, and she also saw her with a black eye during this period. Rizo took Budzinski to the hospital after her finger was injured. Budzinski told Rizo who did it. **RR2** 107-9. On cross-examination, Rizo in essence confirmed she was no longer friends with Budzinski, in part because of the "whole end of her relationship" with Appellant. Rizo denied Budzinski used drugs, but she acknowledged that she drank alcohol. Rizo testified that when she took Budzinski to the hospital, she said she had fell and hurt herself. On redirect, Rizo said Budzinski changed her story and eventually told her Appellant had caused the injury. On re-cross examination, trial counsel questioned Rizo about Budzinski changing her story. **RR2** 109-12.

Austin Police Officer Seth Glass testified he made a traffic stop on Appellant—whom he identified in court—on November 14, 2013. Glass saw Appellant approach an intersection and make a right turn without signaling his intent. Appellant had a passenger in the car named Rudy Soto. After he pulled Appellant over, Glass ran a check on him and noted he had prior involvement with Austin Police, as well as documentation as a "Tango Blast" gang member. Glass asked Appellant to step out of the car, and he asked where he had been. Finding

Appellant's story to be suspicious, Glass asked for Appellant's consent to search the car, which Appellant granted. Inside the car, Glass found a digital scale and a bottle of white powder, labeled "Vitablend." Trial counsel objected to unlawful search and seizure under the Fourth Amendment of the United States Constitution. The objection was overruled, and trial counsel obtained a running objection. **RR2** 113-17.

The Vitablend was in a black velvet bag, which Glass found to be suspicious. Glass was aware through training and experience that this powder was used to cut drugs such as cocaine. In the trunk, under the spare tire, Glass found a clear bag containing approximately 100 smaller clear Ziploc bags, as well as a clear vial and five glass tubes containing plastic roses, commonly used as "stems" to smoke crack cocaine. The State introduced an evidence bag containing all of the items Glass seized. Trial counsel objected that the items were seized in violation of the Fourth Amendment of the United States Constitution, Article I, Section 9 of the Texas Constitution, and Tex. Code Crim. Proc. § 38.23. The trial court overruled these objections. Glass testified he wrote Appellant a citation for Possession of Drug Paraphernalia for the items he found in the car. A certified copy of Appellant's conviction was also introduced into evidence, over trial counsel's objections that these documents constituted hearsay, and that their admission

denied Appellant his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution. **RR2** 117-21; **RR3** SX # 7-8.

On cross-examination, Glass testified Appellant was driving a rental car at the time. Glass agreed that most of the items he seized were found in the center console. Glass confirmed there was a passenger in the car who was not arrested. Appellant told Glass he and his ex-girlfriend had been using the car, and Glass conceded the items he found could have belonged to the ex-girlfriend. On redirect, Glass gave this woman's name as Rosie Hernandez. **RR2** 122-3.

Beth Jones testified she was a probation supervisor for Travis County Adult Probation. Jones testified Appellant was assigned to her caseload after he was placed on probation on May 13, 2013, and she identified Appellant in court. Jones testified there were a number of conditions of probation imposed upon Appellant, including avoiding injurious and vicious habits, avoiding persons or places of disreputable or harmful character, and avoiding the use of all narcotics, habit-forming drugs, alcoholic beverages, and controlled substances. Jones testified Appellant was ordered to pay a community supervision fee, and that he was delinquent $296.18 as of May 20, 2014, with the delinquency totaling $776.18 at the time of the hearing. Jones testified he was also ordered to pay a family violence center fee and was delinquent $64.62 as of May 20, 2014. Jones testified he was also ordered to have no contact whatsoever with Andrea Leal, and any such contact

20

was a violation of the conditions of his probation. Jones testified Appellant also had a delinquent balance of $107.87 on his supervision fees, a delinquent balance of $80.89 towards his court costs, a delinquent balance of $53.90 towards the fine assessed against him, and a delinquent balance of $539.29 towards restitution for Andrea Leal's medical bills. Jones testified Appellant had made no payments since his "arrest," presumably meaning his most recent arrest. Jones testified her office made clear to all probationers that they were not to violate the laws of the State of Texas while on probation, and that any such offenses constituted a violation of probation. Jones testified Appellant was penalized with two days' of jail time on her department's "sanctions docket" for failure to report, an infraction not listed in the motion to adjudicate. **RR2** 123-9.

On cross-examination, trial counsel questioned Jones about this sanction. Jones stated Appellant made his last payment on March 13, 2014. Jones acknowledged that Appellant had told his probation officer he was having difficulties making his payments. **RR2** 129-30. At the State's request, the trial court took judicial notice of the terms and conditions of Appellant's probation, and the State then rested. **RR2** 130.

Trial counsel called Rudy Soto as a witness. Soto testified he worked for himself, doing remodeling and miscellaneous construction and repair work. Soto identified Appellant as someone who used to work for him. Soto lived near his

mother's house, where Appellant stayed, and Soto would see him coming in and out of his mother's house when he was working. Soto testified he was doing a remodeling job on some apartments across the street from their house. Soto testified he knew Budzinski, and he had seen her over at the house "about 20, 30 times." Soto never spoke to her. Soto testified he "always saw her drunk," and "always outside yelling." Soto saw her fall down once, at "the time that those two laws showed up." From a distance, Soto saw her talking to officers, and he saw them taking pictures of her. Soto was not close enough to hear what was being said. Soto testified they put her in the patrol car and drove away, and he never saw her again. Soto was unsure if she hurt herself when she fell. Soto never saw her get into a fight with Appellant. Soto testified he was with Appellant when they were pulled over once, when Appellant was giving Soto a ride back to their job site. Soto did not get arrested, but Appellant received a ticket. Soto testified a drug dog was brought to the scene but it did not detect anything. **RR2** 131-7.

On cross-examination, Soto confirmed it would have been November 11 when he saw the officers speaking to Budzinski and taking pictures. Soto testified that on the day he was stopped with Appellant, the officers "didn't find nothing" and "just gave [Appellant] a ticket." Soto did not see anything being taken out of the car. Soto denied having any drug paraphernalia in the car. Soto denied knowing that Appellant was dealing drugs. Soto testified Appellant was working for him at

22

the rate of $10.00 per hour, at least seven hours a day, during the time Appellant was on probation. Soto did not know whether Appellant paid rent at his mother's, nor did he know whether her duplex was subsidized. Soto was unaware of Appellant being arrested in possession of cocaine and methamphetamine. Soto testified he never saw him using drugs, and he volunteered that Appellant did not even drink. Soto affirmed this statement on redirect. **RR2** 137-40.

The defense then rested. The State did not offer any rebuttal evidence. After hearing the argument of counsel, the trial court found that a number of the allegations found in the State's "Second Amended Motion to Proceed with an Adjudication of Guilt" were true. The trial court then proceeded to sentencing and assessed a term of eighteen (18) years in the Institutional Division of the Texas Department of Criminal Justice. **RR2** 140-54; **CR1** 64, 70-2. The trial court certified Appellant's right to appeal, and he filed timely notice of appeal. **CR1** 62, 80. This appeal followed.

## Summary of Argument

The trial court's "Judgment Adjudicating Guilt" should be modified, in that the written judgment alleges that the trial court found two violations of the terms and conditions of Appellant's probation that were not reflected by the trial court's oral pronouncement of judgment. **RR2** 149-52; **CR1** 70-2. Because the oral pronouncement of judgment controls where there is a variance from the written

23

judgment entered by the trial court, the "Judgment Adjudicating Guilt" should be

modified by deleting these two findings.

**Issue Number One**
**The written "Judgment Adjudicating Guilt" should be modified by deleting**
**violations of the terms and conditions of community supervision that were not**
**included in the trial court's oral pronouncement adjudicating Appellant's**
**guilt.**

The "Second Amended Motion to Proceed with an Adjudication of Guilt"

filed in the instant cause contains 23 different alleged violations of the terms and

conditions of Appellant's community supervision. **CR1** 50-2. The written

"Judgment Adjudicating Guilt" reflects that the trial court found 21 of these

alleged violations to be true, including:

> FAILED TO HAVE NO CONTACT WITH ANDREA LEAL,
> EITHER IN WRITING, IN PERSON, BY PHONE,
> ELECTRONICALLY, OR THROUGH THIRD PARTIES AND
> STAY 200 YARD[S] FROM WHERE THEY LIVE, WORK, OR
> ANY PLACE THEY MAY BE;
>
> * * * * *
>
> COMMITTED A SUBSEQUENT CRIMINAL OFFENSE IN THAT
> ON OR ABOUT THE 10TH DAY OF SEPTEMBER 2013, IN
> TRAVIS COUNTY, TEXAS JUAN LEAL DID THEN AND THERE
> INTENTIONALLY, KNOWINGLY AND RECKLESSLY CAUSE
> BODILY INJURY TO ANDREA LEAL, A MEMBER OF JUAN
> LEAL'S FAMILY AND HOUSEHOLD AND A PERSON WITH
> WHOM JUAN LEAL HAS HAD A DATING RELATIONSHIP, BY
> STRIKING ANDREA LEAL ON OR ABOUT THE FACE WITH
> HIS HAND OR BY PUSHING HER WITH HIS HAND.

**CR1** 70-1. These two findings were not included in the trial court's oral pronouncement of judgment adjudicating guilt. **RR2** 149-52. To the extent there is a variance between the trial court's oral pronouncement of judgment and the written judgement, the oral pronouncement controls. *Taylor v. State*, 131 S.W.3d 497, 500-2 (Tex.Crim.App. 2004); *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex.Crim.App. 2002); *Coffey v. State*, 979 S.W.2d 326, 328 (Tex.Crim.App. 1998). The written "Judgment Adjudicating Guilt" should be modified by deleting these findings in order to conform to the trial court's oral pronouncement of judgment.

Otherwise, trial counsel must reluctantly concede that the judgment and sentence must be otherwise affirmed as modified. Deferred adjudication community supervision differs from regular probation by allowing a defendant who pleads guilty to an offense and who successfully completes community supervision to avoid "conviction." The only issue to be determined by the trial court in a deferred adjudication revocation proceeding is whether to proceed with an adjudication of guilt. Tex.Code Crim.Proc. §42.12, Sec. 5(b). A determination by a trial court to adjudicate guilt is reviewable in the same manner as a revocation of community supervision under Tex.Code Crim.Proc. §42.12, Sec. 21. *Antwine v. State*, 268 S.W.3d 634, 636 (Tex.App.—Eastland 2008, pet. ref'd). The review of a trial court's order revoking community supervision is limited to determining

whether the trial court abused its discretion, taking into account the sufficiency of the evidence supporting the basis for revocation. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex.Crim.App. 2013); *Caddell v. State*, 605 S.W.2d 275, 277 (Tex.Crim.App. 1980). Abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Crim.App. 1992).

The State must prove by a preponderance of the evidence that a defendant violated the terms of his probation. *Cobb v. State*, 851 S.W.2d 871 (Tex.Crim.App. 1993); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex.Crim.App. 1984). The State's burden of proof is satisfied if the greater weight of credible evidence creates a reasonable belief that the defendant violated a condition of his probation as alleged by the State. *Rickels v. State*, 202 S.W.3d 759, 764 (Tex.Crim.App. 2006); *Solis v. State*, 589 S.W.2d 444, 447 (Tex.Crim.App. 1979). However, when a trial court finds several violations of probationary conditions, as is the case in the instant cause, the order revoking probation must be affirmed on appeal if the proof of any single allegation is sufficient. *Moore v. State*, 605 S.W.2d 924, 926 (Tex.Crim.App. 1980) ("We need not address appellant's other contentions since one sufficient ground for revocation will support the court's order to revoke probation."); *Hart v. State*, 264 S.W.3d 364, 367 (Tex.App.—Eastland 2008, pet.

ref'd); *Greer v. State*, 999 S.W.2d 484, 486 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd).

In community supervision revocation cases, a claim of insufficient evidence is limited to the traditional legal-sufficiency analysis, in which the evidence is viewed in the light most favorable to the decision to revoke. *Hart*, 264 S.W.3d at 367. In a revocation proceeding, the trial judge is the sole trier of the facts, the credibility of the witnesses, and the weight to be given their testimony. *Diaz v. State*, 516 S.W.2d 154, 156 (Tex.Crim.App. 1974). When the State fails to meet its burden, it is an abuse of discretion for the trial court to issue a revocation order. *Cobb*, 851 S.W.2d at 874; *Cardona*, 665 S.W.2d at 493–94. "To overturn a revocation order, a defendant must successfully challenge each finding on which the revocation is based." *Harris v. State*, 160 S.W.3d 621, 626 (Tex. App.—Waco 2005, pet. dism'd); *see also Jones v. State*, 571 S.W.2d 191, 193-4 (Tex.Crim.App. 1978 [Panel Op.]); *Brooks v. State*, 153 S.W.3d 124, 126 (Tex. App.—Beaumont 2004, no pet.). The degree of proof required to establish the truth of the allegation in a motion to revoke probation is not the same as a criminal prosecution. *Hacker*, 389 S.W.3d at 865. This means that a defendant may be acquitted of a crime and still have his probation revoked based on the same act, because a "preponderance-of-the-evidence" standard—rather than a "beyond-a-reasonable-doubt" standard—

applies to revocation proceedings. *See Barrett v. State*, 630 S.W.2d 335, 336-7 (Tex.App.—Houston [14th Dist.] 1982, no pet.).

The State presented unchallenged and uncontroverted evidence that Appellant caused Angela Budzinski bodily injury on October 10, 2013, as alleged in its motion, by striking her on or about her face with his hand and pushing her with his hand and by dragging her by his hand and pulling her hair with his hand. The State also presented unchallenged and uncontroverted evidence that Budzinski was a member of Appellant's household or had been in a dating relationship with Appellant. **RR2** 83-92; **RR3** SX # 11-14; **CR1** 51. The State presented unchallenged and uncontroverted evidence that Appellant caused Budzinski bodily injury on November 3, 2013, by seizing a phone from her hand and bending her finger with his hand, and that he knowingly prevented or interfered with her ability to place an emergency call or request assistance by seizing her phone. **RR2** 92-101; **RR3** SX # 15-21; **CR1** 51. The State presented unchallenged and uncontroverted evidence that Appellant caused Andrea Leal bodily injury on April 8, 2014, by striking her on or about the face with a cell phone, by pushing her with his hand, and by seizing her on or about the throat and neck and impeding her normal breathing and circulation of the blood by applying pressure with his hand. **RR2** 47-59; **RR3** SX # 23; **CR1** 52. The State also presented unchallenged and uncontroverted evidence that Appellant caused Andrea Leal bodily injury on April

28

20, 2014, by striking her on or about her face with his hand. **RR2** 60-6; **CR1** 52. All of these violations were duly reflected both by the trial court's oral and written pronouncement of judgment. **RR2** 150-2; **CR1** 71-2. Even if one freely assumes that the other allegations alleged were not satisfactorily proven by the State, or that trial counsel's various objections should have been fully sustained, the evidence adduced at the hearing sufficed to support the trial court's decision to adjudicate Appellant's guilt. *See*, *e.g.*, **RR2** 8-9, 11-12, 15-16, 18, 26-8, 38-41, 117, 120-1. The punishment assessed was within the range authorized by statute. *See* Tex. Penal Code §§ 12.42(a), 22.01(b)(2),(A). Except as noted herein, the judgment of the trial court must be affirmed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, for the reasons stated above, Appellant prays that this Court modify the "Judgement Adjudicating Guilt" by deleting the recitals described above. Appellant prays for all other general relief to which he may be entitled.

Respectfully submitted,

\_\_/s/ Paul M. Evans_____
Paul M. Evans
811 Nueces Street
Austin, Texas 78701
(512) 569-1418
(512) 692-8002 FAX
SBN 24038885
paulmatthewevans@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing

Appellant's Brief was delivered by e-service facsimile to the office of the District

Attorney of Travis County—mailing address P.O. Box 1748, Austin, Texas 78767,

physical address 509 W. 11th Street, Austin, Texas 78701—on this the 4th day of

September, 2015.

\_\_\_/s/ Paul M. Evans_____

Paul M. Evans

## CERTIFICATE OF COMPLIANCE

Relying on the Microsoft Word 97-2003 Document word count utility, I hereby certify that the present document contains 6,427 words, counting all contents herein.

\_\_\_/s/ Paul M. Evans_____

Paul M. Evans
